UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JACOB KAPLAN,

                                  12 Civ. 7610

                       Plaintiff,        **SECOND AMENDED COMPLAINT**

       -against-

UNITED HEALTHCARE INSURANCE COMPANY
OF NEW YORK and OPTUMHEALTH, INC.,

                     Defendants.

---------------------------------------- x

      Plaintiff, by his attorneys Ferber Chan Essner & Coller, LLP, as and for his second amended complaint, states as follows:

      1.    This is the second time that plaintiff has been forced to bring an action which seeks to hold defendants accountable for their bad-faith failures to reimburse plaintiff for the costs of the mental health services which he needs. Although defendants have never denied that the services for which plaintiff has sought reimbursement are medically necessary, they have employed their full panoply of bureaucratic gamesmanship, in violation of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act (the "Act") to avoid paying the amounts that they owe. Defendants must be called to account for their misconduct.

      2.    Upon information and belief, defendants, in erecting these various bureaucratic roadblocks to appropriate reimbursement for the outpatient medically necessary mental health services required by plaintiff, once again are seeking to punish

plaintiff for daring to use an out-of-network provider for these medically necessary services.

## THE PARTIES

3. Plaintiff is currently a resident of the County, City and State of New York. Plaintiff is currently 25 years old.

4. At all relevant times, upon information and belief, defendant United Healthcare Insurance Company of New York ("United") was and is a domestic corporation.

5. At all relevant times, upon information and belief, defendant OptumHealth, Inc. ("Optum") was and is a foreign corporation doing and transacting business in New York State. Optum does business under various trade names such as "OptumHealth".

## RELEVANT BACKGROUND

6. At all relevant times, plaintiff's mother, Francine Kaplan, was and is an assistant New York State attorney general and was and is an employee of the State of New York designated management/confidential.

7. At all relevant times, Ms. Kaplan was an enrollee in New York State Insurance Program for employees of the State of New York designated management/confidential (the "NYSIP").

8. At all relevant times, plaintiff was an eligible dependent of Ms. Kaplan entitled to insurance coverage as described in the certificates of insurance for the NYSIP and as required by New York State law. The Empire Plan Mental Health and Substance

Abuse Program (the "EPMHSAP") provides insurance coverage for mental health care and substance abuse care to enrollees in the NYSIP and their eligible dependants.

9. Since January 1, 2009 United has been the insurer of the EPMHSAP and Optum has been the administrator of the EPMHSAP.

10. The EPMHSAP's certificate of insurance (the "Certificate") provides, in relevant part, as follows:

### What is Covered Under the Mental Health and Substance abuse Program

This section describes Program coverage for inpatient and outpatient care.

**Outpatient care**

Coverage for outpatient care includes the following medically necessary services:

...
B. **Office Visits**. You are covered for office visits for general mental health care.

11. Under the terms of the Certificate, beneficiaries are entitled to reimbursement for at least 80% of the reasonable and customary charges for covered services by practioners.

12. Under the terms of the Certificate, the reasonable and customary charges for mental health services means, at the very least, "The usual charge for Mental Health services of other Practitioners of similar training or experience in the same or similar geographic area for the same or similar service."

13.     Plaintiff has been diagnosed with Major Depressive Disorder, Chronic and Severe, Social Phobia and Personality Disorder, Not Otherwise Specified. These disorders cause significant and distressing symptoms, such as depressed mood and severe anxiety, as well as very severe difficulties functioning academically and occupationally.

14.     In 2004, after graduating from high school, plaintiff enrolled as a student at Cornell University in Ithaca, New York. However, during the summer of 2006, plaintiff experienced severe mental health problems and as a result was granted a medical leave of absence from Cornell.

15.     Plaintiff began psychiatric treatment on the New York City area and in early 2007 began treatment by Dr. Bret Rutherford, a psychiatrist who maintains his office in New York City. Dr. Rutherford, a graduate of Harvard College and Columbia University College of Physicians and Surgeons, is an assistant professor of clinical psychiatry at Columbia University Medical Center. After a year of psychiatric treatment, plaintiff, in the fall of 2007, returned to his studies at Cornell.

16.     Although plaintiff continued psychiatric treatment in Ithaca, in the spring of 2008, due to his mental health condition plaintiff was no longer able to continue his studies at Cornell and was again granted a medical leave of absence from Cornell. Plaintiff resumed his treatment by Dr. Rutherford in New York and plaintiff resumed his studies at Cornell in the fall of 2009.

17.     Despite Plaintiff's best efforts and continued psychiatric treatment in Ithaca, plaintiff, in the spring of 2010, sought and was granted an additional medical leave of absence from Cornell.

18. In May 2010, plaintiff resumed his psychiatric treatment by Dr. Rutherford on a twice-weekly basis and that treatment continues to this day.

19. In August 2010, plaintiff was referred to and began outpatient treatment in the Columbia Day Treatment Program (the "Day Program"). The Day Program is an intensive group therapy program specifically geared towards high-functioning adults who have had to interrupt their educational or professional pursuits because of mental illness. Moreover, the Day Program includes a unique program specifically designed for young adults and college student who are in need of intensive psychological treatment to move forward to a productive life. Plaintiff continued outpatient treatment in the Day Program until January 2011.

**Defendants' Previous Denials
Of Benefits To Plaintiff**

20. In February 2011, plaintiff was forced to bring suit against defendants based upon their denial of benefits to plaintiff for his treatment in the Day Program, for his ongoing treatment by Dr. Rutherford and for the services of a psychologist and a psychiatrist who were treating plaintiff in Ithaca while he was a student at Cornell.

21. That action, *Kaplan v. United Healthcare Ins. Co. of New York*, index no. 11-3993 (Sup. Ct. Westchester Co.) was resolved and terminated in August, 2011.

**Defendants' Failure To Reimburse Plaintiff
Fully For His Treatment By Dr. Rutherford**

22. As described above, for much of the past four years plaintiff has been treated by Dr. Rutherford, a psychiatrist whose office is located in Manhattan. Dr. Rutherford is a non-network provider.

23. Since May 2010, Dr. Rutherford has been treating plaintiff in two office visits per week. It is undisputed that this treatment of plaintiff is medically necessary, as Dr. Rutherford has stated to defendants in writing. It is undisputed that the Certificate provides that plaintiff will be reimbursed for office visits. Nevertheless, since May 2012 defendants have refused to reimburse plaintiff for all of his office visits to Dr. Rutherford and have arbitrarily concluded that plaintiff should only be reimbursed for two office visits per month.

24. In a letter dated December 18, 2012, defendants announced that they have arbitrarily concluded that plaintiff should not be reimbursed for *any* of his office visits to Dr. Rutherford.

**The Act**

25. The Act has been codified at, *inter alia*, 29 U.S.C. §1185a and 42 §300gg-26.

26. The Act mandates that if a group health plan offers both (a) medical and surgical benefits and (b) mental health or substance use disorder benefits, that group health plan cannot have any limitations or restrictions that apply only to mental health or substance use disorder benefits.

27. The Act is intended to prevent disparate practices by health insurers that create barriers to patients obtaining mental health care. It provides, in relevant part:

> **(3) Financial requirements and treatment limitations**
> **(A) In general**
>
> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental

    health or substance use disorder benefits, such plan or coverage shall ensure that—

     (i) the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan (or coverage), and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and

     (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. §1185a(a)(3).

## FIRST CAUSE OF ACTION

28. Plaintiff repeats the allegations of paragraphs 1 through 27.

29. Defendants have breached their duties under the Certificate by denying benefits to plaintiff for his ongoing medically necessary treatment, all of his office visits to Dr. Rutherford.

30. By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial but believed to be in excess of $25,000.

## SECOND CAUSE OF ACTION

31. Plaintiff repeats the allegations of paragraphs 1 through 27.

32. Plaintiff contends that all of his office visits to Dr. Rutherford are medically necessary and plaintiff is entitled to reimbursement for all of those visits.

33. On information and belief, defendants dispute this contention.

34. Accordingly, there is an actual, justiciable controversy existing between plaintiff and defendants as to each of these contentions

35. Plaintiff is entitled to a declaratory judgment that all of his office visits to Dr. Rutherford are medically necessary and plaintiff is entitled to reimbursement for all of those visits.

## THIRD CAUSE OF ACTION

36. Plaintiff repeats the allegations of paragraphs 1 through 35.

37. During the course of plaintiff's treatment by Dr. Rutherford, defendants have persistently barraged plaintiff with requests for outpatient treatment reports and "HISTORY/DSM CODES/INITIAL EVAL/TREATMENT PLAN/PROGRESS AND NOTES", repeatedly pursued telephone interviews with Dr. Rutherford, and continually forced plaintiff to seek renewed authorizations for his office visits to Mr. Rutherford.

38. Upon information and belief, this conduct by defendants with regard to plaintiff is defendants' regular business practice with regard to beneficiaries seeking mental health or substance use disorder benefits.

39. Upon information and belief, defendants do not engage in similar practices in their provision of medical and surgical benefits.

40. Upon information and belief, defendants engage in these practices in order to obstruct the access of beneficiaries, including plaintiff, to medically necessary mental health care.

41. By virtue of the foregoing, defendants have violated the Act.

42. By virtue of the foregoing, plaintiff is entitled to damages in an amount to be determined at trial, as well as a preliminary and permanent injunction restraining defendants from violating the Act and reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

43. Plaintiff repeats the allegations of paragraphs 1 through 42.

44. On October 26, 2012, in connection with a payment of benefits that were owed under the EPMHSAP, defendants unilaterally deducted from that payment the amount of $420 which defendants claimed was an overpayment that had been made to plaintiff in 2010.

45. The Certificate does not permit defendants to make unilateral recoupments from payments to beneficiaries and neither does any Federal or New York State law.

46. Accordingly, defendants have breached the Certificate by making this unilateral and groundless recoupment.

47. By reason of the foregoing, plaintiff has been damaged in the amount of $420.

**WHEREFORE**, plaintiff demands judgment as follows:

1. On the first cause of action, against defendants, jointly and severally, damages in an amount to be determined at trial but believed to be in excess of $25,000, plus pre-judgment and post-judgment interest;

2. On the second cause of action, a declaratory judgment that all of plaintiff's office visits to Dr. Rutherford are medically necessary and plaintiff is entitled to reimbursement for all of those visits;

9

3. On the third cause of action, damages in an amount to be determined at trial, as well as a preliminary and permanent injunction restraining defendants from violating the Act and reasonable attorneys' fees;

4. On the fourth cause of action, against defendants, jointly and severally, damages in the amount of $420, plus pre-judgment and post-judgment interest; and

5. Such other and further relief as to this Court appears just and proper, together with the costs and disbursements of this proceeding.


Dated: New York, New York
      January 11, 2013

                        FERBER CHAN ESSNER & COLLER, LLP

                        By: _____
                                Robert M. Kaplan
                        Attorneys for Plaintiff
                        530 Fifth Avenue
                        New York, New York 10036
                        (212) 944-2200

## DECLARATION OF SERVICE

STATE OF NEW YORK   )
                    )ss:
COUNTY OF NEW YORK)

      ROBERT M. KAPLAN, under penalty of perjury, declares as follows:

1.    I am an attorney at law, admitted to practice before this Court and a member of Ferber Chan Essner & Coller, LLP, attorneys for plaintiff.

2.    On January 11, 2013, I served the within Second Amended Complaint upon Sedgwick LLP, attorneys for defendants, at 225 Liberty Street, 28th Floor, New York, New York 10281, the address designated by said attorneys for that purpose, by depositing a true copy of same in a properly addressed, postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                                ROBERT M. KAPLAN

Dated: New York, New York
       January 11, 2013